IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 23-cv-02607-GPG-TPO

JOHN T. FROST,

        Plaintiff,

v.

MEDICINE MAN TECHNOLOGIES, INC. D/B/A
SCHWAZZE; JUSTIN DYE; DANIEL R. PABON; DANIEL
BONACH; CETAN WANBLI WILLIAMS; BRIAN RUDEN;
SALIM HUSAN WAHDAN; BASSEL HUSAN WAHDAN;
KYLE KREUGER; FORREST HOFFMASTER; NIRUP
KRISHNAMURTHY; SCHWAZZE COLORADO LLC; SBUD
LLC; TWO J'S D/B/A THE BIG TOMATO; STAR BUDS
LOUISVILLE, LLC,

        Defendants.

---

## REPORT AND RECOMMENDATION

---

**Timothy P. O'Hara, United States Magistrate Judge.**

Before the Court is Defendants'—Medicine Man Technologies, Inc. d/b/a Schwazze ("MMT"), Justin Dye, Daniel R. Pabon, Daniel Bonach, Cetan Wanbli Williams, Brian Ruden, Salim Husan Wahdan ("S. Wahdan"), Bassel Husan Wahdan ("B. Wahdan"), Kyle Kreuger, Forrest Hoffmaster, Nirup Krishnamurthy, Schwazze Colorado LLC ("Schwazze"), SBUD LLC ("SBUD"), Two J's d/b/a The Big Tomato ("Tomato"), and Star Buds Louisville, LLC (Star Buds) —Partial Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6). ECF 33. Defendants' Motion was referred to this Court for recommendation by District Judge Gordon P. Gallagher.[1]

The Court has carefully considered the Partial Motion to Dismiss [ECF 33], Plaintiff's Response [ECF 39], Defendants' Reply [ECF 41], the entire case file, and the applicable case law

---

[1] The Motion was initially referred to Magistrate Judge Starnella. ECF 35. Upon my appointment, this Motion was reassigned to this Court for recommendation. ECF 44.

in issuing this Report and Recommendation. The Court finds that oral argument will not materially assist in making a recommendation on the Motion. Based upon the record herein, the Court respectfully recommends the Motion be GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

The Court takes the following facts from Plaintiff's Complaint and presumes they are true for the purposes of this Recommendation.[2] This summary mirrors the factual summary noted by U.S. Magistrate Judge Kathryn A. Starnella in her Recommendation on the Plaintiff's Motion for Leave to Amend Complaint [ECF 6]. ECF 26.

Plaintiff has been employed with Defendant Star Buds, a recreational marijuana dispensary in Louisville, Colorado, since July 2021. ECF 4 at ¶ 26. His job title is "budtender," which required him to work "on the sales floor and at the cash registers assisting customers in the selection of cannabis products. Budtenders also work packing products and restocking inventory." *Id.* at ¶ 34. Plaintiff is paid at a rate of $12.00/hour, and he "also customarily and regularly earns more than thirty dollars ($30) per month in tips." *Id.* at ¶ 35.

A significant portion of Plaintiff's Complaint involves his employer's use of tips that are received from customers. *Id.* at ¶ 38. Patrons regularly leave tips for the staff, either by contributing to a tip jar or by adding a tip to a debit transaction. *Id.* at ¶¶ 38-41. "Pursuant to company-wide policy and practice, Defendants use a mandatory tip pool system to distribute tips, both cash and debit, to employees." *Id.* at ¶ 42. The cash tips are distributed to budtenders and supervisors daily, in an amount proportional to their hours worked. *Id.* at ¶ 43. Because the distributed tips are proportioned according to hours worked, supervisors and managers, who generally work more

---

[2] *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006); *see also Boulter v. Noble Energy*, 521 F. Supp. 3d 1077, 1082 (D. Colo. 2021) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

hours than budtenders, received larger portions of the tips compared to budtenders, who typically service the customers leaving the tips. *Id.* at ¶¶ 33 & 45. Plaintiff alleges that through this tip pooling system, Defendants regularly engaged in wage theft by including supervisors and managers in the tip pool in violation of the Fair Labor Standards Act ("FLSA") and Colorado Wage Claim Act ("CWCA"). *Id.* at ¶ 57.

Plaintiff further alleges that Defendants unlawfully misused tip wages by taking money from tips to pay for employees' meals. *Id.* at ¶¶ 47 & 57. Although disguised as an additional benefit from the employer, this practice amounted to stealing tips from the employees. *See id.* at ¶¶ 79-82. To receive their meal reimbursements, employees were instructed to provide their meal receipt and sign for reimbursement, which was then given with money taken from the cash register. *Id.* at ¶ 78. As part of Star Buds' closing procedures, Defendants B. Wahdan, Krueger, and other managers and employees "balanced" the money from the cash tips budtenders earned. *Id.* at ¶ 79-81. Any subsequent shortages from the registers would be covered by taking funds directly from the tip jars. *Id.* at ¶ 81.

Plaintiff alleges that Defendant B. Wahdan was told on several occasions that taking tip money, or repurposing it, is wage theft and illegal in Colorado. *Id.* at ¶¶ 82 & 90. For example, around October 2021, a newly hired budtender, Blake, witnessed the closing procedures, and "announced to all employees in Star Buds Louisville that it is illegal for [Defendant B.Wahdan] to take tips in Colorado." *Id.* at 90. Plaintiff confirmed the illegality through his own research and confronted Defendant Kreuger about it. *Id.* at ¶ 109.

In another instance that occurred around December 11, 2021, the cash register was allegedly three hundred dollars short at closing. *Id.* at ¶ 82. Defendant Kreuger called Defendant Wahdan, who, despite being reminded that taking employees' tips is illegal, directed Defendant

Kreuger to take money from the tip jars to make up for the shortage. *Id.* Plaintiff alleges that Defendant B. Wahdan blatantly disregarded any advice to stop this practice, responding that it was his store, and he could take what he wanted. *Id.*

Plaintiff alleges that Defendant B. Wahdan "became even more aggressive and harassing" towards Plaintiff as time went on. *Id.* at ¶ 111. In addition to yelling at Plaintiff, Defendant B. Wahdan allegedly made inappropriate comments to Plaintiff, and on one occasion, grabbed Plaintiff's "midsection and shook [Plaintiff's] stomach and stated 'John, you're fat' and began laughing." *Id.* Plaintiff also allegedly witnessed "belittling, humiliating, [and] harassing" behavior from Defendant B. Wahdan towards other employees. *Id.* at ¶ 113. For one employee, Aran, Defendant B. Wahdan's behavior was allegedly "so severe a company no contact order was implemented." *Id.* Plaintiff alleges that other employees at Star Buds reported Defendant B. Wahdan's "harassing and unfair employment practices to MMT" between July 2021 and August 2022. *Id.* at ¶ 114. Despite Plaintiff's—and other employees'—reports, Defendant MMT did not "take any actions or measures to protect employees and customers at Star Buds Louisville . . ." *Id.* at ¶ 116. Plaintiff alleges that reports were made to MMT human resources employees but no disciplinary measures were taken. *Id.* at ¶ 118.

According to Plaintiff's Complaint, the conduct of Defendant B. Wahdan significantly contributed to the negative work environment. Defendant B. Wahdan often consumed alcohol off premises during the workday, which would exacerbate the "aggressive, verbally abusive, intimidating, and harassing" behavior towards the employees. *Id.* at ¶ 120. Plaintiff alleges Defendant B. Wahdan made threats to terminate his employment, which "[took] a toll on [Plaintiff's] physical, emotional and mental wellbeing, especially with respect to [his] diagnosis of PTSD." *Id.* at ¶ 121. Due to the work environment at Star Buds, Plaintiff alleges he suffered

emotional harm, including insomnia, anxiety attacks, and panic attacks. *Id.* at ¶ 127. Plaintiff further makes general allegations that Defendant B. Wahdan began to treat Plaintiff worse after Plaintiff expressed his concerns about the improper tip allocation practices. *Id.* at ¶¶ 129-130.

Further harassment is allegedly related to Plaintiff's veteran status. *Id.* at ¶ 131. Defendant B. Wahdan knew that Plaintiff has PTSD from his tour of duty in Iraq and is a "protected class as a Disabled Military Combat Veteran . . ." *Id.* at ¶ 74. Knowing Plaintiff's status as a Disabled Military Combat Veteran, Defendant B. Wahdan would regularly disclose Plaintiff's mental health issues to customers without Plaintiff's consent. *Id.* at ¶ 131. These remarks made Plaintiff feel humiliated. *Id.*

Plaintiff alleges that the hostile work environment was obvious to other employees at Star Buds. *See id.* at ¶ 135. At one point, Defendant Kreuger remarked that he "[didn't] know why [Defendant B. Wahdan] yells at you (Frost) like he's a drill sergeant." *Id.* Although it was obvious, nobody intervened, including MMT's Human Resources Department. Plaintiff alleges a "revolving door" of human resources employees; they were terminated upon receiving complaints "regarding tip stealing, harassment, unfair employment practices, etc. from Star Buds Louisville employees." *Id.* at ¶ 195. In addition to a hostile work environment, Plaintiff alleges his employers did not take adequate measures to accommodate his disability. *See id.* at ¶¶ 159-63.

Plaintiff's Complaint names eleven Defendants, five of which are corporate entities and six of whom are individuals. He brings seven claims, failing to specify which claims are against which Defendants. As a result, the Court will presume that all claims are brought against all Defendants.

Plaintiff asserts that each Defendant is "an 'employer' within the meaning of 29 U.S.C. § 203(d) and C.R.S § 24-34-401." *Id.* at ¶19. Plaintiff brings both federal law claims and claims

under Colorado civil and criminal law: (1) Wage Theft—Stealing of Cash Tips, Violation of FLSA

and COMPS  (C.R.S. § 8-4-103(6), Colorado Overtime and Minimum Pay Standards Order), (2)

Harassment (C.R.S. §18-9-111(e) and (h)), (3) Discriminatory and/or Unfair Employment

Practices (C.R.S. §24-30-402(1)(a)(I)(e)(i)), (4) Unjust Enrichment (common law), (5) Menacing

(C.R.S. §18-3-206), (6) Criminal Extortion (C.R.S. § 18-3-207), and (7) (a) Intimidation of a

Witness (C.R.S. § 18-8-704); Tampering with Witness, (C.R.S. § 18-8-707); (b) Obstruction of

Justice (C.R.S. § 18-8-102(1)); (c) Colorado Organized Crime Act ("COCCA") (C.R.S. § 18-17-

104(2)). *See generally* ECF 4. Plaintiff requests the following relief: (1) a "declaratory judgment

that Defendants have willfully and wrongfully refused to recognize [Plaintiff's] statutory and legal

obligations and deprived [him] of his rights, privileges, protections, benefits, compensation and

entitlements . . ."; (2) "a declaratory judgment declaring that Defendants have willfully and

wrongfully refused to recognize [Plaintiff's] statutory and legal obligations as a protected class,

Permanently Disabled Military Combat Veteran . . ."; (3) monetary damages under the FLSA and

COMPS #38 "in the form of back pay compensation and benefits, unpaid entitlements; and

liquidated damages equal to his unpaid compensation;" (4) monetary damages under C.R.S. § 18-

4-405 for back pay compensation and benefits, interest, and treble damages for his unpaid wages;

(5) a finding that all Defendants are guilty of state and federal criminal statutes as identified in the

Complaint; (6) "penalties, including fines and incarceration and any other civil penalty allowable

by law for criminal acts committed by Defendants;" and (7) a finding that Defendants violated the

Colorado Organized Crime Act ("COCCA") and the imposition of "any and all penalties against

Defendants allowable by law." ECF 4 at p. 43.[3]

---

[3] The page numbers cited are as designated by the electronic case filing ("ECF") system and not
as numbered in the documents themselves.

Plaintiff filed the operative complaint in Boulder County district court on September 9, 2023. *See id.* at p. 1. Defendants removed the matter to federal court on October 6, 2023. ECF 1. On October 11, 2023, Plaintiff filed a motion for leave to amend his complaint, seeking to add a charge under a criminal statute. ECF 6. On July 12, 2024, U.S. Magistrate Judge Kathryn A. Starnella recommended that Plaintiff's Motion for Leave to Amend be denied based on futility. ECF 26. District Judge Gallagher affirmed and adopted Magistrate Judge Starnella's recommendation on July 31, 2024. ECF 29.

## LEGAL STANDARDS

### I. Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "'Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on the plaintiff's behalf.'" *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit has interpreted this rule to mean that if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, [their] confusion of various legal theories, [their] poor syntax and sentence construction, or [their] unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## II.  Fed. R. Civ. P. 12(b)(1): Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a Complaint for lack of "subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter." *Walker v. Knapic*, No. 20-cv-02179-RBJ-MEH, 2021 WL 4311821, at *1 (D. Colo. Aug. 30, 2021) (citing *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994)), *report and recommendation adopted*, 1:20-cv-02179-RBJ, 2021 WL 4307145 (D. Colo. Sept. 22, 2021). Federal courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). A court lacking jurisdiction must dismiss a case when it "becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Even if the parties do not raise the question of lack of jurisdiction, "it is the duty of the federal court to determine the matter *sua sponte*." *Id.* (first citing *Atlas Life Insurance Co., v. W.I. Southern, Inc.*, 306 U.S. 563 (1939); and then citing *Continental Mining & Milling Co. v. Migliaccio*, 16 F.R.D. 217 (D. Utah Aug. 31, 1954)).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject-matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject-matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a

8

court's reference to evidence outside the pleadings does not convert the motion to
a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

### III.   Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

Under Rule 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which

relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) motions "test the sufficiency of the

allegations within the four corners of the complaint after taking those allegations as true." *Mobley*

*v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citing *Williams v. Meese*, 926 F.2d 994, 997

(10th Cir. 1991)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential

evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone

is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*,

336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's

claims are plausible when the well-pled facts allow "the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin

to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id*. When considering a 12(b)(6) motion, a court must "presume[] all of plaintiff's

factual allegations are true and construe[] them in the light most favorable to the plaintiff." *Hall*,

935 F.2d at 1109.

However, the court need not accept as true mere legal conclusions asserted with

"threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements." *Iqbal*, 556 U.S. at 678. (citing *Twombly*, 550 U.S. at 555). The court "must determine

whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). If a plaintiff's factual allegations have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### IV.    Consideration of Information Outside the Complaint

While consideration of a Rule 12(b)(6) motion is generally limited to the four corners of the Complaint, there are three exceptions. First, "attached exhibits and documents incorporated into the complaint by reference" may be considered. *See Denver Health & Hosp. Auth. v. Beverage Distributors Co., LLC*, 843 F. Supp. 2d 1171, 1177 (D. Colo. 2012) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)) (quotation marks omitted). Second, the Court may take judicial notice of information, "such as certain documents contained in the public record." *See Sweesy v. Sun Life Assur. Co. of Canada (USA)*, 643 F. App'x 785, 789 (10th Cir. 2016) (first citing *in re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015); and then citing *Binford v. United States*, 436 F.3d 1252, 1256 n. 7 (10th Cir. 2006)). Third are "documents [that] are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)) (quotation marks omitted).

In the present case, Plaintiff's "Response to Defendants' Partial Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)," ECF 39, was filed with ten attachments totaling more than 100 pages. The materials include some publicly-available documents from the United States Securities and Exchange Commission (SEC). Defendants have explicitly opposed the

consideration of this information, citing a line of cases that note the impropriety of allowing a plaintiff to amend the Complaint by pleading additional facts in the response to a Motion to Dismiss. ECF 42 at pp. 3-4 (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995); *Miranda v. Little*, No. 20-cv-03004-NYW, 2022 WL 19419, at *7 n. 5 (D. Colo. Jan. 3, 2022) (citation omitted); *Jeffers v. Denver Pub. Schools*, No. 16-cv-02243-CMA-MJW, 2017 WL 2001632, at *3-4 (citation omitted)). As a result, because the "usual rule" is to consider only the information within the four corners of the Complaint, *Jeffers*, 2017 WL 2001632, at *3, and no exception applies, the Court will not consider the outside information in analyzing the Defendants' Motion to Dismiss.[4]

## ANALYSIS

In their Motion to Dismiss [ECF 33], Defendants argue that all Plaintiff's claims, except for his Fair Labor Standards Act ("FLSA") and Colorado Wage Claim Act ("CWCA") claims against Defendants B. Wahdan and Star Buds, should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). ECF 33 at pp. 2-3. As to Claim One, Defendants argue that Plaintiff fails to plead that any Defendants, other than Defendants Star Buds and B. Wahdan, are "employers" under the FLSA or CWCA. For Claim Three, Defendants contend that plaintiff "has pleaded no facts showing harassing conduct to support a claim for disability harassment." *Id.* at p. 3. Also as to Claim Three, Defendants argue Plaintiff failed to exhaust administrative remedies with respect to all Defendants except Star Buds. *Id.* Defendants further argue that Claim Four, a claim of unjust enrichment, is duplicative and should be dismissed because it is preempted by the FLSA. *Id.* For Claims Two, Five, Six, and Seven, Defendants argue that Plaintiff fails to state a claim because he brings the claims under criminal statutes, which do not grant a private cause of

---

[4] However, the Court will consider the information as it relates to whether the Defendants' request to dismiss should be with or without prejudice. *See infra* at p. 31.

action. *Id.* Finally, Defendants argue that Plaintiff's allegation under COCCA fails because he has not pled a plausible violation of that statute. *Id.*

Plaintiff's Response [ECF 39] does not address Defendants' arguments regarding CADA (Claim Three), unjust enrichment (Claim Four), or that criminal statutes cannot grant a private right of action in a civil suit (Claims Two, Five, Six, and Seven). Instead, Plaintiff focuses on the idea that additional Defendants, other than Defendants B. Wahdan and Star Buds, should be considered as Plaintiff's "employer." *See generally* ECF 39.

Plaintiff also adds other, new factual allegations, including that his paychecks are issued by MMT or Tomato and that they are responsible for issuing his tax documents. ECF 29 at p. 4. Beyond factual allegations, Plaintiff also raises a new argument of vicarious liability under C.R.S. § 13-21-111.5(1.5), arguing that the Corporate Defendants are "employers" because Star Buds was acquired by MMT, and the Corporate Defendants play different roles in managing his payroll and compensation and in addressing any employee workplace reports. *See generally id.*

Defendants argue in their Reply, and the Court agrees that the new factual allegations and legal theories raised in Plaintiff's Response should be disregarded. ECF 42 at pp. 3-4. The Court may only consider the well-pled allegations made in the Complaint, and the Court's analysis herein disregards the new factual allegations and legal arguments raised in Plaintiff's Response. *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d. 1201, 1206 (D. Colo. 2015) ("Plaintiff, however, cannot amend [his] complaint by adding factual allegations in response to Defendant's motion to dismiss.") (citations omitted); *see also Smith v. Trujillo*, No. 20-cv-00877-RBJ-NYW, 2021 WL 1799400, at *8 (D. Colo. March 26, 2021), *report and recommendation adopted*, 1:20-CV-00877-RBJ-NYW, 2021 WL 1608829 (D. Colo. Apr. 26, 2021).

**Claim One: Wage Theft under the FLSA and CWCA**

Claim One alleges that Defendants violated the tip provisions of the FLSA, 29 U.S.C. § 203(m)(2)(B), and the CWCA, C.R.S. § 8-4-103(6). ECF 4 at ¶¶ 50-52. The FLSA provides "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). Under Colorado law, it is

> unlawful for an employer engaged in a business where the custom prevails of the giving of gratuities by patrons to an employee of the business to assert a claim to, or right of ownership in, or control over gratuities. These gratuities are the sole property of the employee unless the employer notifies each patron in writing, including by a notice on a menu, table tent, or receipt, that gratuities are shared by employees. Nothing in this section prevents an employer from requiring employees to share or allocate gratuities on a preestablished basis among the employees of the business.

C.R.S § 8-4-103(6).

The FLSA's penalty provision creates a cause of action against employers in violation of 29 U.S.C. § 203(m)(2)(B):

> Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).

An "employer" under the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d). The CWCA provides that the word "'[e]mployer' has the same meaning as set forth in the federal 'Fair Labor Standards Act' . . ." C.R.S § 8-4-101(6). An "employee" under the FLSA is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA's definition of "employer" is to be construed expansively. *See Fuentes v. Compadres, Inc.*, No. 17-cv-01180-CMA-MEH, 2018 WL 1444209,

at *4 (D. Colo. March 23, 2018) (first citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318,

326 (1992); and then citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). "An

employer under the [FLSA] is someone who: (1) has the power to hire and fire the employee; (2)

supervises and controls the employee's work schedule or conditions of employment; (3)

determines the rate and method of payment; and (4) maintains employment records." *Inniss v.

Rocky Mountain Inventory, Inc.*, 385 F. Supp. 3d. 1165, 1168 (D. Colo 2019) (citing *Robertson v.

Bd. of Cnty. Comm'rs of Cnty. of Morgan*, 78 F. Supp 2d 1142, 1151 (D. Colo. 1999)) (alteration

in original). "No one factor is dispositive, but instead a court must consider the economic realities

and the circumstances of the whole activity." *Id.* (citing *Robertson v. Bd. Of Cty. Comm'rs*, 78 F.

Supp. 2d 1142, 1151) (D. Colo. 1999).

In analyzing whether an individual defendant is an employer, a major consideration is "the

level of operational control" the individual Defendant had over the company. *Koellhoffer v. Plotke-

Giordani*, 858 F. Supp. 2d 1181, 1190 (D. Colo. 2012) (first citing *Alvarez Perez v. Sanford-

Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008); and then citing *Herman v. RSR

Security Servs., Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999)). Under this factor, courts look at the

individual's role in "the day-to-day functions of the business or [their] direct responsibility for the

supervision of the employee." *Id.*

Because of this expansive definition, "[a]n employee may have more than one employer

responsible for the FLSA provisions." *Mason v. Miro Jewelers, Inc.*, No. 19-cv-02459-LTB-KLM,

2020 WL 6828015, at *2 (D. Colo. March 17, 2020) (citing *Roberston*, 78 F. Supp. 2d at 1150).

"Separate persons or entities that share control over an individual worker may be deemed joint

employers under the FLSA." *Barnett v. Vapor Maven OK 1, LLC*, No. 21-cv-423-TCK-JFJ, 2022

WL 16950273, at *2 (N.D. Okla. Nov. 15, 2022) (first citing *Donovan v. Grim Hotel Co.*, 727 F.2d

966, 972 (5th Cir. 1984); and then citing *Schultz v. Capital Int'l Sec. Inc.*, 466 F.3d 298, 305 (4th

Cir. 2006) (quotation marks omitted)). Joint employers are held, individually and jointly, to FLSA

compliance. *Id.* (citing *Schultz*, 466 F.3d at 305). While the Tenth Circuit has not articulated a test

to determine whether entities are "joint employers" under the FLSA, the Tenth Circuit and courts

in this District have applied the above-referenced "economic realities" test in similar cases.

*Coldwell v. Ritecorp Envtl. Prop. Sols.*, 16-cv-01998-NYW, 2017 WL 1737715, at *5 (D. Colo.

May 4, 2017) (citations omitted).  Because no one factor is dispositive, courts consider the totality

of the circumstances and "focus [] the analysis [] on the employee, and not the legal relationship

between the employers." *Id.* (citing *Harbert v. Healthcare Svcs. Group, Inc.*, 173 F. Supp. 2d 1101,

1106 (D. Colo. 2001)).

Managers can be "employers" and held individually liable in the context of FLSA. *See*

*Koellhoffer*, 858 F. Supp. 2d at 1190; *see also Thomas v. Pauls Valley Boomarang Diner, LLC*,

320 F. Supp 3d 1253, 1260 (W.D. Okla 2018) ("The FLSA does not limit managers from liability

for wage and hour violations—the operative test remains the multi-factored 'economic realities

test' for the relationship between a putative employer and employee.") (citations omitted); *see also*

*Saavedra v. Lowe's Home Centers, Inc.*, 748 F. Supp. 2d 1273, 1285 (D.N.M. 2010) (discussing

the Tenth Circuit's determinations regarding employment relationships which are not limited by

traditional common law concepts and contractual terminology) (citations omitted). However, the

manager must demonstrate control over the plaintiff to be deemed an employer. In *Koellhoffer,* for

example, at the summary judgment stage, the Court determined that the managers' job descriptions

supported that there was enough to find a genuine issue of material fact that managers were

"employers." *Koellhoffer*, 858 F. Supp. 2d at 1190. These managers' job descriptions provided

they "set the weekly schedule for floor employees, monitored employee performance and

15

satisfaction and prepared evaluations of the employees, addressed and resolved employee issues as they arose, and interviewed, hired and fired as needed." *Id.* In *Thomas*, the plaintiff stated a plausible claim for relief against the defendant store manager as a joint employer who "'acted as a manager at all of defendants' [] locations' and terminated [the plaintiff]." 320 F. Supp 3d at 1260.

Plaintiff's Complaint states that all "Defendants are 'employers' within the meaning of 29 U.S.C. § 203(d) and C.R.S § 24-34-401." ECF 4 at ¶ 19. Plaintiff fails to cite each independent Defendant's roles and responsibilities and explain why each should be considered as an "employer" under the referenced statutes.

While Defendants concede that Plaintiff has "arguably" alleged that Defendants Star Buds and B. Wahdan are "employers," Defendants argue that Plaintiff fails to allege any facts to support that Defendants Dye, Pabon, Bonach, Williams, Ruden, S. Wahdan, Kreuger, Hoffmaster, Krishnamurthy, MMT, Schwazze, SBUD, or Tomato also are "employers" as defined in the FLSA. ECF 33 at p. 6. Defendants assert that Plaintiff fails to allege facts regarding any other Defendant's role in day-to-day operational control or direct supervision over Plaintiff. *Id.* at p. 7.

### A) Defendants B. Wahdan and Star Buds

Because Defendants do not seek dismissal of Claim One against Mr. B. Wahdan and Star Buds, this Court need not consider the merits of Plaintiff's FLSA and CWCA claims against these Defendants. This Court finds that the allegations in Plaintiff's Complaint plausibly establish Defendants Star Buds and B. Wahdan are "employers" as defined under the FLSA and CWCA.

### B) Corporate Defendants: MMT, Schwazze, SBUD

This Court finds that Plaintiff has sufficiently pled a plausible theory for MMT, but not for Schwazze or SBUD. As it relates to MMT, numerous facts from Plaintiff's Complaint support the Court's conclusion. Plaintiff stated that he was an employee of MMT [ECF 4 at ¶ 43], and he

repeatedly reported complaints directly to MMT [*id.* at ¶103]. Other Star Buds employees also made their complaints to MMT. *Id.* at ¶¶ 114-115. In fact, MMT's human resources was the *only* human resources department Plaintiff contacted.[5] Additionally, policy and procedures at Star Buds was "approved and in place by MMT." *Id.* at ¶ 87. And when there was a dispute between Defendant B. Wahdan and another employee, "MMT intervened and advised [Defendant B. Wahdan] to no longer have any contact with [the employee] whatsoever." *Id.* at ¶ 112. As clarified by Plaintiff as part of his Response [ECF 39], Star Buds is under the "ownership, control, and operation of MMT dba Schwazze." ECF 39 at p. 4. Plaintiff also was in frequent contact with MMT: he made weekly reports—sometimes more often— regarding the wage theft. *Id.* at p. 5.[6] And when Plaintiff considered filing a lawsuit, he reached out to MMT "to confer, remedy, and resolve the aforementioned allegations." ECF 4 at ¶ 104.

Considering the totality of the circumstances, including the liberal construction of this pro se Plaintiff's Complaint and the expansive definition intended by the FLSA as it relates to employers, the Court determines that Plaintiff has sufficiently pled that MMT was his employer under the FLSA.

---

[5] All Plaintiff's references to Human Resources relate to MMT. *See* ECF 4 at ¶¶ 10 ("Defendant Daniel Bonach . . . is employed as Vice President, Human Resources by Defendant MMT. . ."); ¶ 144; ("FROST exhausted any and all means of reporting the daily thefts and retaliation, including the discriminatory and unfair employment practices direct toward him . . . with the revolving door of MMT Human Resource (sic) Personnel"); ¶ 145 ("Each time Bob was reported to human resources, the person in human resources . . . was terminated or separated from MMT"); ¶¶ 185 & 195 ("There has been a revolving door of human resources personnel employed by Defendants and supervised by Bonach . . . [who is then separated] from MMT"); ¶ 197 ("FROST and his Veteran's Advocate attended a meeting with Dan Bonach . . ." Human resources personnel were all separated or terminated from MMT.).

[6] These statements are consistent with Plaintiff's Complaint, where Plaintiff claimed to be "an employee of MMT." ECF 4 at ¶ 43. The Court can consider Plaintiff's responsive arguments that clarify, as opposed to amend, allegations made in the Complaint. *See Miranda v. Little*, No. 20-cv-03004-NYW, 2022 WL 19419 (D. Colo. Jan. 3, 2022).

The same cannot be said for Defendants Schwazze and SBUD. Even liberally construing Plaintiff's allegations, the Complaint only contains a hypothetical inference that Schwazze and SBUDS could have exercised sufficient control over Plaintiff as required for purposes of FLSA.[7] Plaintiff pleads insufficient facts to take the hypothetical to the plausible and thus fails to nudge his claims from possible to plausible as it relates to those two Defendants.

Thus, the Court determines that Plaintiff has sufficiently pled his FLSA and CWCA claims as it relates to Defendant MMT. However, the Court recommends dismissal of Claim One as it relates to Defendants Schwazze and SBUD.

### C) Two J's d/b/a The Big Tomato

Plaintiff does not plead that Defendant Tomato was his employer. In fact, the Complaint states clearly: "at no time FROST has been an employee at Tomato." ECF 4 at ¶ 61. Based on Plaintiff's admission, the FLSA and CWCA claims should be dismissed against Two J's d/b/a The Big Tomato.

### D) Other Individual Defendants

#### a.  Defendant Kyle Kreuger

Plaintiff's Complaint alleges that Defendant Kreuger's significantly contributed to the tip theft by handling employee meal receipts and issuing reimbursements, money which Plaintiff alleges was unlawfully taken from tip wages. *Id.* at ¶ 79. Defendant Kreuger would also "balance" the registers with the tip jar money according to the store's ordinary practice. *Id.* at ¶ 81. Defendant Kreuger is also responsible for distributing the cash tips via the tip pooling system. *Id.* at ¶ 83.

---

[7] For example, Plaintiff alleges that budtenders "are regularly asked to work at Defendants' other stores as needed." ECF 4 at ¶ 37. However, Plaintiff never alleges more, like that he worked at Schwazze Colorado LLC or at SBUDs, nor any facts to support the *Robertson* factors as it relates to either organization.

However, Plaintiff fails to allege specific facts demonstrating that Defendant Kreuger possessed the power to control Plaintiff at work. Instead, Plaintiff pleads that Defendant B. Wahdan "had *exclusive control* over FROST's schedule, including what days/times for work, approval/denial for requests for time off, control over the 'white board' in the office at Star Buds Louisville, duties and responsibilities assigned to FROST, including duties outside of and beyond the scope of Budtender at Star Buds Louisville, and control over cash tip allocation and distribution." ECF 4 at ¶ 95 (emphasis added). Every reference to interviewing and hiring made in Plaintiff's Complaint identifies Defendant B. Wahdan as the individual who interviews and hires employees, not Defendant Krueger. *See id*. at ¶ 88 ("Defendant Bob hired and trained Kreuger. . ."); ¶ 90 ("Bob interviewed and hired . . . Blake"); ¶ 113 ("Bob interviewed and hired Aran . . ."); ¶ 147 ("Bob interviewed and hired [Plaintiff] . . .").

Based on the limited information alleged in the Complaint, the *Robertson* factors also fail to support considering Defendant Krueger as an employer. First, Plaintiff failed to allege that Defendant Kreuger had the power to hire or fire him. Second, Defendant B. Wahdan's "exclusive control" over nearly every area of Plaintiff's employment prevents the Court from inferring that Defendant Kreuger controlled the conditions of Plaintiff's employment. As for deciding his rate and method of payment, the Complaint lacks any information tying Defendant Kreuger to that determination. Finally, Plaintiff generally alleges that his employment and work records "are in the exclusive possession, custody, and control of Defendants . . ." *Id.* at ¶ 99. This general, conclusory assertion does not implicate Defendant Kreuger's control over Plaintiff's employment any more than any other Defendant. To push his claim against Defendant Kreuger from possible to plausible, Plaintiff must provide sufficient factual allegations. He does not do so.

Furthermore, the case law supports excluding Defendant Kreuger as an employer. Unlike the manager-employer in *Koellhoffer*, Plaintiff does not plead Defendant Kreuger's specific responsibilities that indicate control over Plaintiff's employment, such as in scheduling, hiring, or termination. Similarly, unlike the manager-employer in *Thomas*, Plaintiff does not allege that Defendant Kreuger acts as a manager at all Star Buds or MMT locations, and Defendant Kreuger did not terminate Plaintiff's employment.

While Plaintiff has provided some factual support that Defendant Kreuger is involved in the day-to-day operations at Star Buds, including alleging his role in the tip theft, the Complaint lacks specific factual allegations regarding Defendant Kreuger's control over Plaintiff's employment. Thus, the Court determines Plaintiff does not sufficiently plead that Defendant Kreuger is an "employer" under the FLSA and recommends dismissal of that claim as to him.

### b. Defendant Daniel Bonach

Plaintiff's Complaint alleges no facts regarding his FLSA and CWCA claims against Defendant Bonach, only detailing meetings and conversations between the two in his Response. *See* ECF 39 at pp. 4, 11, & 12-13. As a result, the Court recommends that Claim One should be dismissed against Defendant Bonach.

### c. Defendant Forrest Hoffmaster

Plaintiff's Complaint references Defendant Hoffmaster only twice: once to identify him [ECF 4 at ¶12] and then to list him as a corporate officer of MMT [*id.* at ¶84]. Plaintiff's Complaint makes no specific factual allegations that Defendant Hoffmaster directly engaged with Plaintiff in any way. *See generally id.* Without any factual allegations, the Court cannot determine, by either applying the *Robertson* factors or the "economic realities" test, that Defendant Hoffmaster was an

"employer" within the meaning of the FLSA. As a result, Claim One of Defendant's Motion to Dismiss should be granted as it relates to Defendant Hoffmaster.

### d.  Defendant Salim Husan Wahdan

Plaintiff alleges that Defendant S. Wahdan was a "business partner" with Mr. Ruden and Defendant B. Wahdan. ECF 4 at ¶ 73. Plaintiff includes Defendant S. Wahdan in a list of individuals who wrote and approved "[t]he standard operating procedures, practices and policies with respect to cash tips at Star Buds Louisville." *Id.* at ¶ 84. Plaintiff also generally alleges that Defendants B. Wahdan and S. Wahdan would speak on the phone in Arabic regarding Star Buds store matters. *Id.* at ¶ 128. Beyond these minimal factual allegations, Plaintiff does not detail personal interactions with Defendant S. Wahdan or the degree of operational control Defendant S. Wahdan had over Star Buds. The failure to allege *any* day-to-day supervisory control over Plaintiff's employment does not support a plausible claim against Defendant S. Wahdan.

To the extent that Plaintiff implies that Defendant S. Wahdan, as a former owner of Star Buds, is an employer, he is incorrect. *See Inniss,* 385 F. Supp. 3d at 1168 ("ownership by itself is not relevant under the *Robertson* factors"); *see also Tinnin v. Lesner*, No. 20-cv-03460-STV, 2021 WL 2853275, at *2 (D. Colo. July 7, 2021) ("ownership by itself does not qualify an individual as an employer under the FLSA") (citations omitted). As a result, Claim One of Defendant's Motion to Dismiss should be granted as it relates to Defendant S. Wahdan.

e.   **Defendants Justin Dye, Daniel R. Pabon, Cetan Wanbli Williams, Brian Ruden, and Nirup Krishnamurthy ("MMT Defendants")**[8]

Plaintiff's Complaint provides no factual allegations regarding Defendants Dye, Pabon, Williams, Ruden, and Krishnamurthy, and therefore, he fails to allege that any of these Defendants are employers within the FLSA's meaning. A one-off mention in a complaint is not a well-pled factual allegation sufficient to support a claim for relief under the FLSA or CWCA. As a result, Claim One of Defendant's Motion to Dismiss should be granted as it relates to the MMT Defendants.

## Claim Three: Discriminatory and/or Unfair Employment Practice

Plaintiff brings Claim Three under the Colorado Anti-Discrimination Act ("CADA"), C.R.S § 24-34-402(1)(a)(1)(e)(i), alleging discriminatory and unfair employment practices. Plaintiff's Complaint, using vague, conclusory language, alleges that "'Defendants', especially [Defendant B. Wahdan's] management practices and behavior towards [Plaintiff] at Star Buds Louisville can be defined pursuant to" these statutes. *Id.* at ¶ 139. According to Plaintiff's EEOC Charge, he alleges unlawful discrimination because of his "protected classes and/or in retaliation for engaging in protected activity in violation of the Colorado Anti-Discrimination Act (CADA)." ECF 33-1.

Plaintiff alleges that Defendants engaged in discriminatory and unfair employment practices by "harassment." The Complaint details the following specific occurrences that he alleges were "harassment" by Defendant B. Wahdan: grabbing and shaking Plaintiff's midsection and calling him "fat," *id.* at ¶ 111; threatening to terminate Plaintiff's employment, *id.* at ¶ 121;

---

[8] The Court discusses these Defendants together because they are all named as executives employed with MMT, and Plaintiff refers to them only in naming them as Defendants and identifying (most of) their positions at MMT.

disclosing Plaintiff's PTSD, *id.* at ¶ 131; demonstrating "verbally abusive" behavior, *id.* at ¶ 120; and throwing five hundred dollars in cash at Plaintiff in response to Plaintiff inquiring about emergency funds for employees*, id.* at ¶ 168. Additionally, Plaintiff alleges that Defendants B. Wahdan and S. Wahdan's phone conversations in Arabic were "unwelcoming, harassing, hostile, and malicious" towards Plaintiff, who suffers PTSD from his military tour in Iraq. *Id.* at ¶¶ 146-47. Plaintiff alleges that Defendant B. Wahdan knew or should have known that Plaintiff could understand some Arabic, and looking at Plaintiff while saying "I'll protect the store, I'll do whatever it takes" was disability-based harassment. *Id.*

Plaintiff asserts that he "exhausted any and all means of reporting the daily thefts and retaliation, including the discriminatory and unfair employment practices directed towards him at Star Buds Louisville" by contacting MMT's "revolving door" of human resources personnel. ECF 4 at ¶ 144. Plaintiff alleges that Defendant B. Wahdan became more "emboldened" as Plaintiff's reports continued to yield no results. *Id.* at ¶ 145. Of all eleven named Defendants, Plaintiff only details "unwelcome, harassing, hostile and malicious behavior" from Defendant B. Wahdan. *Id.* at ¶ 146.

Defendants' Motion to Dismiss argues that Plaintiff fails to state a claim under CADA because his allegations of "generalized harassment" fails to state a hostile work environment claim. ECF 33 at p. 11 (citing *Collins v. Bd. of Cnty. Commissioners of Nowata Cnty.*, No. 22-cv-375-GKF-MTS, 2023 WL 3854085, at *4 (N.D. Okla. June 6. 2023) (dismissing plaintiff's disability-based hostile work environment claim). Additionally, Defendants argue that Plaintiff's allegations of harassment are unrelated to his disability. *Id.* Defendants further contend that, even if Plaintiff sufficiently pleads a disability harassment claim, his claims against any Defendants, except Star Buds, should be dismissed because Plaintiff failed to exhaust administrative remedies. *Id.* at pp.

12-13. Defendants argue that failure to exhaust administrative remedies implicates the Court's subject matter jurisdiction under Colorado law, so Plaintiff's failure to exhaust is fatal to his CADA claims. *Id.* In support, Defendants attach Plaintiff's Charge of Discrimination as an exhibit to their Motion to Dismiss. ECF 33-1.

Plaintiff's Response does not address Defendants' arguments regarding his claims under Count III. *See generally* ECF 39.

### CADA's exhaustion requirement

Defendants argue that Plaintiff's CADA claims are subject to dismissal for failure to exhaust against all Defendants except Star Buds. ECF 33 at p. 12. Plaintiff's response states he "has exhausted any and all administrative remedies regarding this action. [CADA] administrative proceedings do not provide for the identification of multiple parties to be individually identified under the same corporate umbrella as Defendants." ECF 39 at p. 13.

Under CADA, a plaintiff must exhaust their administrative remedies before filing a civil action. C.R.S. § 24-34-306(14). A plaintiff has exhausted their administrative remedies once the CCRD issues a notice of a right to sue. C.R.S. § 24-34-306(15). As an initial matter, while Defendants bring their Motion under Rule 12(b)(6) for failure to state a claim, under Colorado law, exhaustion is a jurisdictional matter. *Lasser v. Charter Commc'ns Inc.*, No. 19-cv-02045-RM-MEH, 2020 WL 2309506, at *3 (D. Colo. Feb. 10, 2020), *recommendation denied as moot on other grounds*; *see* C.R.S. § 24-34-306(14). Because Plaintiff's CADA claim is before the Court on supplemental jurisdiction, the Court must apply CADA's substantive law exhaustion requirement. *Id.* The failure to exhaust remedies under CADA is more "properly characterized [as] a factual attack on the Court's subject matter jurisdiction." *Id.* at *4. The general rule that a court may consider evidence without converting a motion to dismiss to a motion for summary judgment

does not apply when "the jurisdictional question is intertwined with the merits of the case." *Id.*
(first citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987); and then citing *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000)). However, the jurisdictional question of administrative exhaustion under CADA is not intertwined with the merits of Plaintiff's discrimination and harassment claims. *See id.* (citations omitted). Accordingly, the Court may take judicial notice of evidence without converting the motion into one for summary judgment.

Defendants request the Court to take judicial notice of Plaintiff's CCRD Charge, filed on September 5, 2022, and attached as Exhibit A to their Motion to Dismiss, because it is "an administrative record and it is central to Plaintiff's CADA claims." ECF 33 at p. 12 n.2 (citing *Villareal v. Walmart, Inc.*, No. 19-cv-01722-PAB-STV, 2021 WL 1022701, at *5 (D. Colo. Mar. 17, 2021)). In the Court's wide discretion in assessing subject matter jurisdiction under Rule 12(b)(1), the Court takes judicial notice of Plaintiff's CCRD Charge, as well as the related documents Plaintiff attaches to his Response brief as Exhibits 8 and 9. ECFs 39-8 & 39-9.

The Court addresses Defendants' dispositive exhaustion argument first as it challenges the Court's jurisdiction. As it relates to all Defendants, including Star Buds, Plaintiff has not alleged that he has received a notice of a right to sue from the CCRD, nor has he attached such a notice to the Complaint or the Response. *See generally* ECF 4 & 39. The failure to plead the CCRD Notice of Right to Sue is a fatal flaw to the claim, and as a result, the Court need not consider the merits of Plaintiff's CADA claims against any Defendant at this time. *See e.g., Jackson v. City & Cnty. of Denver*, No 11-cv-02293-PAB-KLM, 2012 WL 4355556 (D. Colo. Sept. 24, 2012) (granting motion to dismiss for failure to plead CCRD notice of right to sue).

Additionally, regarding the Defendants other than Star Buds, Schwazze, and MMT, Plaintiff's references contained in the CCRD Complaint did not provide the required notice to

exhaust his CADA claim. *See Bank v. Allied Jewish Fed'n of Colorado*, 4 F. Supp. 3d at 1242; *see also Lindsay v. Denver Pub. Sch.*, No. 20-cv-03477-CMA-MEH, 2021 WL 5277826, at *6 (D. Colo. Mar. 22, 2021), *report and recommendation adopted*, No. 20-cv-03477-CMA-MEH, 2021 WL 5277825 (D. Colo. May 27, 2021) (rejecting the plaintiff's argument that references throughout their EEOC charge was sufficient in the context of CADA to put a defendant not named as a respondent on notice). Plaintiff's assertion that naming all Defendants as respondents is not required under CADA is erroneous, so any Notice of Right to Sue provided under this Charge would not satisfy CADA's exhaustion requirement for any Defendants other than Star Buds, Schwazze, and MMT. Thus, Plaintiff's CADA claims should be dismissed without prejudice for lack of subject matter jurisdiction against all Defendants.

### Claim Two: Unjust Enrichment

Plaintiff's Claim IV alleges that "Defendants are unjustly enriched by their refusal to pay [Plaintiff] all his tips owed and have benefitted at his expense." *Id.* at ¶ 173. Defendants argue that this claim is entirely preempted by Plaintiff's Claim One under FLSA and CWCA because this claim relies on the same facts and seeks the same relief. ECF 33 at pp. 13-15. The Court agrees.

To recover for unjust enrichment, Plaintiff much show that "(1) a benefit was conferred on the defendant by the plaintiff; (2) the benefit was appreciated by the defendant; and (3) the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value." *Does v. Rodriguez*, No. 06-cv-00805-LTB, 2007 WL 684117, at *5 (D. Colo. Mar. 2, 2007) (quoting *Humphrey v. O'Connor*, 940 P.2d 1015, 1021 (Colo. App. 1996)).

Courts in this District have regularly held that state law claims that restate FLSA claims are preempted. *Barnett v. Pikes Peak Community College*, No. 14-cv-02820-LTB, 2015 WL

4245822, at *5 (D. Colo. July 14, 2015) (ruling that a breach of contract claim that restated an

FLSA claim was preempted); *see Chytka v. Wright Tree Service, Inc.*, 925 F. Supp. 2d 1147, 1173

(D. Colo. 2013) (finding unpaid overtime claim preempted by FLSA); *but see Valverde v. Xclusive*

*Staffing, Inc.*, No. 16-cv-00671-RM-MJW, 2017 WL 3866769, at *9 (D. Colo. Sept. 5, 2017)

(discussing preemption for state claims echoing FLSA claims but claims "alleg[ing] something

more" are not preempted). Because Plaintiff's unjust enrichment claim rests on the same

allegations incorporated from his FLSA claim, without alleging something more, Claim Four is

entirely preempted and should be dismissed with prejudice under Rule 12(b)(6).

### Claims Two, Five, Six, and Seven: Colorado Criminal Statutes

Most of Plaintiff's remaining claims are based on Colorado Criminal Statutes. Claim Two

cites C.R.S. § 18-9-111(1)(e) and (h) (criminal harassment) and C.R.S. § 18-2-201 (conspiracy);

Claim Five cites C.R.S. § 18-3-206 (menacing); Claim Six cites C.R.S. § 18-3-207 (criminal

extortion); and Claim Seven cites C.R.S. § 18-8-704 (intimidation of a witness), C.R.S. § 18-8-

807 (tampering with a witness), C.R.S. § 18-8-102 (obstruction of justice), and C.R.S § 18-17-104

(Colorado Organized Crime Act ("COCCA")).

Defendants argue that Plaintiff's Claims Two, Five, Six, and Seven should be dismissed

with prejudice because they are brought under criminal statutes which do not grant a private right

of action. ECF 33 at pp. 15-16. Plaintiff's Response does not address these arguments. *See*

*generally* ECF 39. The Court agrees with Defendants.

Magistrate Judge Starnella issued a Recommendation to deny Plaintiff's Motion for Leave

to Amend the Complaint and provided detailed analysis on the futility of citing criminal statutes

to support civil claims. ECF 26, *affirmed and adopted in full* at ECF 29. The Court need not

reiterate Magistrate Judge Starnella's thorough analysis. Plaintiff's requests for the Court to "find

that all Defendants are guilty of the state and federal criminal statutes as identified in each Count

contained in this complaint" and to "impose on Defendants [criminal] penalties," ECF 4 at p. 43,

are not available remedies. *Cf. Diamond v. Charles*, 476 U.S. 54, 64 (1986) (private citizens do

not have standing to prosecute).

Plaintiff's reliance on criminal statutes, without pointing to any language in the statute that

would create a private right of action, fails to state a claim. *See Smith v. Hickenlooper*, 164 F.

Supp. 3d 1286, 1290 (D. Colo. 2016) ("[T]here is a strong presumption that criminal statutes,

enacted for the protection of the general public, do not create a private right of action.") (quoting

*Safe Streets Alliance et. al*, No. 15-cv-349-REB-CBS, 2016 WL 223815 (D. Colo. Jan. 19, 2016)).

Thus, Plaintiff's claims raised under criminal statutes—Claims Two, Five, Six, and Seven—

should be dismissed with prejudice. Although dismissal with prejudice is a harsh remedy, *see*

*AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs., Inc*., 552 F.3d 1233, 1236 (10th Cir.

2009), Plaintiff has already been denied leave to amend the Complaint to add additional criminal

claims on futility grounds. At this point, allowing amendment of his Complaint to add more

criminal claims would compound the previously found futility. *See Brereton v. Bountiful City*

*Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

**Claim Seven: Colorado Organized Crime Act ("COCCA")**

Plaintiff's Claim Seven also alleges a violation of COCCA. ECF 4 at ¶¶ 198-203.

Plaintiff cites C.R.S. §§ 18-17-104(1)-(4) and alleges "Defendants have violated [COCCA]

by their actions violating C.R.S. § 18-4-401 (Theft), C.R.S. § 18-3-206 (Menacing), C.R.S. §

18-3-207 (Criminal Extortion), C.R.S § 18-8-707(1) (Tampering with a Witness or Victim),

C.R.S. § 18-8-704 (Intimidating a witness or victim), amongst other violations." *Id.* at ¶ 202.

Plaintiff, in conclusory fashion, claims "Defendants have been violating COCCA at every

available opportunity pursuant to the aforementioned allegations contained [throughout Claim Seven]." *Id.* at ¶ 203.

Defendants argue that Plaintiff has failed to sufficiently plead: a pattern of predicate acts, the existence of an enterprise, or that any Defendants agreed to commit to a pattern of racketeering activity. ECF 33 at pp. 18-23. Plaintiff replies, conceding a lack of support in the Complaint, stating that he "is able to prove the COCCA allegations and other allegations contained in his Complaint as disclosures and discovery are conducted." ECF 29 at p. 14.

To properly plead a COCCA claim, Plaintiff must allege that Defendants "plausibly participated in the affairs of an 'enterprise'" through a pattern of two or more instances of racketeering activity." *Henson v. Bank of America*, 935 F. Supp. 2d 1128, 1136 (D. Colo. 2013) (citing *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1076 (D. Colo. 2012)); *see also* C.R.S. §18-17-103(3) and (5). Plaintiff must also plead these acts "are related to the conduct of the enterprise." *Clementson v. Countrywide Financial Corp.,* 464 Fed. App'x 706, 713-714 (10th Cir. 2012) (citing *New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363 (Colo. App. 1993)). The underlying acts are "predicate acts" forming the basis of COCCA liability. *See Free v. Kramer*, 624 F. Supp. 1227, 1234 (D. Colo. 2022) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006)).

Plaintiff's complaint references several instances where Plaintiff called the Louisville Police Department to "investigate the claims raised by [Plaintiff]." *Id.* at ¶ 184. The details of these visits are scarce, but Plaintiff states that the Louisville Police Department came to Star Buds at least three times. *Id.* at ¶ 190. Plaintiff also alleges that Mr. B. Wahdan coerced the Star Buds employees to provide false testimony to the police officers. *See id.* at ¶¶ 183-184. However, beyond these conclusory allegations, Plaintiff does not provide particular, factual allegations and merely

lists elements of the criminal statutes that he alleges were violated. The few details provided regarding the Louisville Police Department's investigation are not enough to infer the plausibility of criminal racketeering conduct by any Defendant. Such allegations lacking factual support fail to "nudge[] [his] claim[s] across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, so his COCCA claim should be dismissed against all Defendants.

## **DISMISSAL WITH OR WITHOUT PREJUDICE**

This Court is mindful of the Tenth Circuit's recommendation that efforts be made to allow parties to amend, especially pro se plaintiffs, to ensure that justice is served. *See* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave when justice so requires."); *see also Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that when a plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him opportunity to amend." (quotation omitted)); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development could raise substantial issues"). However, where amendment is futile, the Court may dismiss a pro se plaintiff's claims with prejudice.

For Plaintiff's Claims Two, Five, Six, and Seven,[9] the Court recommends dismissal with prejudice against all Defendants. Allowing Plaintiff to amend the Complaint to bring civil claims under criminal statutes that do not allow for a private right of action would be futile.

Similarly, for Claim Four, relating to unjust enrichment, the Court recommends that it be dismissed with prejudice because the claim is preempted by federal law.

---

[9] Only Plaintiff's allegation in Claim Seven under COCCA will be denied without prejudice.

As it relates to Plaintiff's allegation that Defendants violated COCCA in Claim Seven, unlike the other criminal offenses in Claim Seven, the Tenth Circuit has recognized a civil cause of action under COCCA. *See Clementson*, 464 Fed. App'x at 713-14. The Court recommends dismissal without prejudice to allow Plaintiff an opportunity to sufficiently plead a plausible claim for that alleged misconduct.

For Claim Three, because the Court recommends dismissal for lack of subject matter jurisdiction pursuant to CADA's substantive exhaustion requirement, the dismissal must be without prejudice. *See Brereton*, 434 F.3d at 1216 (citations omitted); *see also* Fed. R. Civ. P. 41(b) (specifically excluding dismissals for "lack of jurisdiction"). A case dismissed for lack of jurisdiction "is not an adjudication of the merits and therefore … must be without prejudice." *Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir. 1973) (citations omitted).

For Claim One, the Court recommends that Plaintiff's FLSA and CWCA claims against Defendants Schwazze Colorado LLC, SBUD, Two J's d/b/a The Big Tomato, Dye, Pabon, Bonach, Williams, Ruden, S. Wahdan, Kreuger, Hoffmaster, and Krishnamurthy be dismissed without prejudice. Based on the Court's explanation above, and Plaintiff's attempt to supplement the Complaint with additional facts in his Response as it relates to this claim, information which the Court is unable to consider because it is outside the Complaint, this Court finds that amendment may not be futile at this time.

## CONCLUSION

For the reasons set forth above, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court respectfully **RECOMMENDS**[10] the following:

---

[10] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or

- For Claim One under the FLSA and CWCA, Defendants' Partial Motion to Dismiss [ECF 33] should be **GRANTED** in part, **DENIED** in part. Plaintiff's claim as brought against Defendants Justin Dye, Daniel R. Pabon, Daniel Bonach, Cetan Wanbli Williams, Brian Ruden, Salim Husan Wahdan, Kyle Kreuger, Forrest Hoffmaster, Nirup Krishnamurthy, Schwazze, SBUD, and Two J's d/b/a The Big Tomato should be **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The Motion should be **DENIED** as it relates to Defendants Medicine Man Technologies, Inc., Bassel Husan Wahdan, and Star Buds Louisville, LLC;

- For Claim Three, Defendants' Motion should be **GRANTED** as to all Defendants, and Plaintiff's CADA claims should be **DISMISSED WITHOUT PREJUDICE** under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction;

- For Claim Four, Defendants' Motion should be **GRANTED** as to all Defendants, and Plaintiff's unjust enrichment claims should be **DISMISSED WITH PREJUDICE.**

- For Claims Two, Five, and Six, Defendants' Motion should be **GRANTED** and Plaintiff's claims for Harassment in violation of C.R.S. § 18-9-111(1)(e), Menacing under C.R.S. § 18-3-206, and Criminal Extortion under C.R.S. § 18-3-207 should be **DISMISSED WITH PREJUDICE**.

- For Claim Seven's criminal statute claims (not including COCCA), Defendants' Motion should be **GRANTED** and Plaintiff's claims for Intimidation of a Witness under C.R.S. § 18-8-704, Tampering with a Witness under C.R.S. § 18-8-707, and Obstruction of Justice under C.R.S. § 18-8-102 should be **DISMISSED WITH PREJUDICE** under Rule 12(b)(6);

- For Claim Seven's COCCA claim, Defendants' Motion should be **GRANTED** as it relates to all Defendants, and Plaintiff's COCCA claim should be **DISMISSED WITHOUT PREJUDICE** under Rule 12(b)(6).

---

recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

DATED at Denver, Colorado, this day of 25th February, 2025.

BY THE COURT:

_____
Timothy P. O'Hara
United States Magistrate Judge